[Opinion delivered June 24, 1880.]

---

JAMES MAYNARD v. L. J. AND C. C. LOCKETT.

(Case No. 3453.)

1. RENTS — TENANT HOLDING OVER. — A tenant holding over leased premises after the expiration of his written lease, which fixed the amount of rent, is only bound to pay reasonable value for the premises for the time he holds over, without regard to the rent fixed in the lease contract; and on the trial of a suit for rents it is error to exclude evidence offered by the defendant to show a rescission or setting aside of the written lease.

2. PETITION — VARIANCE. — In a suit for rent, where the complaint claimed rent due without stating the character of the contract under which it was claimed, a petition setting up a written lease at an agreed rent, and a holding over after the expiration of the written lease, is not such a departure from the cause of action indicated in the affidavit as will vitiate the proceedings.

3. RENTS — FILING PETITION. — Filing the petition at the return term of the distress warrant, before motion to dismiss or action taken by the court, is, in a suit for rents, a sufficient appearance to give the court jurisdiction.

Possy.
1   527
86   553
1   527
86t   553

APPEAL from Washington. Tried below before the Hon. E. B. Turner.

This suit was commenced on the 11th day of November, A. D. 1874, by the issuance of citation and distress warrant upon affidavit made before S. A. Hackworth, justice of the peace, by C. C. Lockett, stating:

1st. That James Maynard is justly indebted to L. J. and C. C. Lockett in the sum of six hundred and fifty coin dollars, "as more fully appears by an account hereto attached, marked exhibit 'A,' for rent of certain premises situated in said county, and now occupied by said Maynard."

2d. The said rent is now due and unpaid.

3d. The distress warrant now applied for (November 11, 1874) is not sued out for the purpose of vexing and harassing the defendant.

4th. Exhibit "A:"

"*James Maynard, Dr., to L. J. and C. C. Lockett, coin:*

"To rent of livery stable lot and improvements situate in city of Brenham from October 1, 1873, to November 1, 1874, at $50 coin per month, $650."

The distress warrant was returnable to the district court of Washington county on the first Monday in February, A. D. 1875.

The citation issued November 11, 1874, from S. A. Hackworth, requiring the defendant Maynard to appear before the district court on the first Monday in February, A. D. 1875, to answer a petition to be filed by L. J. and C. C. Lockett, was executed in due time.

By virtue of this warrant, the sheriff levied upon $855 worth of horses, buggies, hacks, of the defendant upon the premises, and retained possession thereof for several days and until replevied.

Plaintiffs filed a petition alleging "that defendant had held the leased premises by a written contract for one year from October 1, 1872, at a monthly rent of $50. That after said year defendant still held over on his said lease, and continued to use and occupy his livery stable (the leased premises) with the tacit understanding that he should continue to oc-

cupy the same upon the same terms as stipulated in said written contract." . . . "That by reason of such holding over of said premises under said written . contract by said defendant, during said period of time, from October 1, 1873, until November 1, 1874, said defendant undertook and promised to pay to plaintiffs monthly the sum of $50 coin;" failure to pay, distress warrant, etc.

It seems that the term of court to which the writ was returnable began February 1, 1875. The petition does not appear to have been filed until February 9, 1875.

February 12, 1875, defendant filed a plea to the jurisdiction of the court, and a separate motion to dismiss "because the petition was not filed as the law requires."

March 27, 1875, the motion to dismiss was overruled, and defendant excepted.

June term, 1875 (marked on margin January 9), defendant filed a general demurrer and special exceptions; and in bar: (1) general denial; (2) admitting the written contract for one year from October 1, 1872, and "that the said contract expired by its terms on the 1st day of October, 1873; that thereafter defendant, with consent of the plaintiffs, continued to occupy the said rented premises until the 10th day of November, 1874." . . . "He expressly denies that any contract for rent of said premises was ever afterwards entered into by and between this defendant and said plaintiffs." (3) A suit for the premises against plaintiffs and defendant; (4) and damages in reconvention for wrongfully suing out distress warrant (alleging that plaintiffs' demand is unjust, extortionate and oppressive, in this, that without cause, and in the absence of a contract for rent, etc., etc.), the warrant had been sued out, his stock seized, his feelings injured, etc.

January 31, 1877, defendant, amending his answer of June 9, 1875, denied all plaintiffs' allegations save as in said answer admitted; alleged that the reasonable rental value of the leased premises for the time he held them was $15 per month; alleging payments, and withdrawing so much of his pleading as seeks to recover damages for wrongful and malicious suing out and levying the distress warrant.

January 31, 1877, plaintiff amended, praying specifically for judgment for his rent and for order of sale, etc.; and further, "that when said defendant held over under said written lease he then and there undertook and promised plaintiffs to pay them so much rent for said premises as (they) were reasonably worth; and that they were reasonably worth the sum of $50 coin per month in advance."

On the trial the plaintiff proved the distress warrant proceedings, levy, replevy, etc.; proved the written contract for lease from October 1, 1872, for one year.

L. J. Lockett, one of the plaintiffs, testified: Plaintiffs leased the livery stable and premises described in the written contract, to the defendant, and the contract was by them executed. That defendant took possession and occupied them until after November 1, 1875. That suit for the first year's rent under the contract was instituted in fall of 1874. That that year's rent was afterwards paid and suit dismissed, defendant paying costs.

The account (now) sued on is just, and the rent money unpaid. Defendant, at the institution of this suit, owed on said contract $650 in coin, rent for said premises for thirteen months, beginning October 1, 1874. That defendant occupied said premises prior to the execution of the lease contract. . . . That about October 1, 1874, defendant said something to witness about reducing rents; did not remember what was said between them, but it was not done. No other contract was made after the written contract was executed. The premises were worth $50 per month, the price agreed to be paid, as set out in the written lease. That the written lease secured the value. Defendant was entitled to some credits, allowed at $91.

Defendant Maynard testified that he had leased and occupied the livery stable premises before the written contract; had forgotten the terms. That a year after the written lease was executed, and after defendant had occupied the premises about a year under the lease, defendant spoke to the plaintiff, L. J. Lockett, about reducing the rent of the premises. (Here plaintiff, with alleged view of showing a

parol surrender of the written lease, and after its termina-
tion he was to pay only so much as the premises were rea-
sonably worth, asked the witness the following questions:)
"State whether or not, on the expiration of the written lease,
you stated to the plaintiff, L. J. Lockett, that you would not
continue to occupy the rented premises on the same terms,
and what was the said Lockett's reply?" To which the
plaintiffs objected, (1) because the defendant had no allega-
tion in his pleadings under which the question and answer
were admissible; (2) that defendant had set up no new
contract; and (3) he could not, by saying that he would not
pay the same rent, relieve himself of his legal liability, but
must either make a new contract or leave the premises.

. The court sustained the objections and excluded the ques-
tions and answers.

The witness continued: The premises, during the time
from October, 1874, till November, 1875, were not worth
the price set out in the written lease; in fact not more than
$15 per month. The property levied upon was in the cus-
tody of the sheriff seven days before the replevy bond was
approved; meanwhile, the sheriff left it in hands of defend-
ant, with his promise not to use it. During that time the
property would have been worth to the defendant $15 per·
day clear profit, but defendant could not use it on account
of instructions from the sheriff.

Leonard Gee, for defendant, testified that the rental value
of the property from October 1, 1874, to November 1, 1875,
was not more than $20 per month, in his opinion.

The court rendered judgment for the account sued on and
ordering sale of the property seized. Motion for new trial
was overruled and defendant appealed, assigning errors:

1. In overruling defendant's motion to dismiss, for reason
given.

2. Overruling motion to quash, for reasons in motion,
which were departure in the petition, etc.

3. Overruling demurrer and exceptions.

4. Excluding the testimony of James Maynard, as shown
·in bill of exceptions.

5. The judgment is excessive and not sustained by the testimony.

6. The judgment is not such as is authorized by statute in such cases.

*P. H. & J. T. Swearingen*, for appellant.

*Breedlove & Ewing*, for appellees.

A. S. WALKER, J.— 1. In analogy to the effect of an appearance entered by a defendant after default day, and before judgment by default taken, it is considered that the filing of the petition at the return term of the distress warrant and before motion to dismiss or action taken by the cou , will be a sufficient appearance to give the court jurisdiction. There was no error in overruling the motion to dismiss.

2. The petition, as amended, was sufficient in itself; nor was it a material departure from the cause of action indicated in the affidavit for the distress warrant. The written contract from October 1, 1872, for one year, was set up as giving its terms, with the allegation that defendant held over for another year under it and was liable for rent at same terms. In amendment it was alleged that the reasonable rental value of the premises was $50 per month, as stated in the affidavit. The motion to quash was therefore properly overruled.

3. The petition alleged a lease for one year by written contract; a holding over by tacit consent; liability from such holding over for same rent — alleged to be the reasonable value, etc.

Defendant denies the *tacit* consent; alleged, however, a *holding over* by consent, but without agreement as to amount of rent to be paid; reasonable value alleged to be but $15 per month.

Thus it was in issue, and material to the rights of the parties, whether the holding over was or not under the former contract as to the price; the new contract alleged by defendant being a rescission or setting aside of the written

lease; a holding over without a stipulated rent. This was not a tenancy from year to year. The former term expired by the written contract October 1, 1873. It required the consent of both parties to the continued possession to attach the terms of the expired contract to the next year. Plaintiffs alleged such consent; the defendant denied the consent to the continued rate. Secor *v.* Pestana, 37 Ill., 522; Right *v.* Dorby, 1 Term, 162; Logan *v.* Heron, 8 Serg. & R., 459, cited in Taylor's L. & T., sec. 467.

Lockett had testified that about the expiration of the written lease, Maynard had approached him and asked a reduction of the rent; that it was refused, etc. Maynard, when on the stand, was asked touching the same conversation, "Whether or not, on the expiration of the written lease, you stated to the plaintiff, L. J. Lockett, that you would not continue to occupy the rented premises on the same terms? And what was the said Lockett's reply?" To this it was objected, (1) because defendant had no allegation in his pleadings authorizing it; (2) defendant had set up no new contract; and (3) in effect that it was immaterial. The court sustained the exceptions.

It is manifest that these objections were not well taken. The testimony was competent material, and relevant to the issues. There was error in its rejection.

4. The judgment was, under the testimony, not excessive in amount. There is gross carelessness in the copy of the statement of facts in the record as to the dates to which the witnesses testified as to the value of the rent. The testimony appears directed to the year from October, 1874, to October, 1875, instead of from October 1, 1873, to October 1, 1874.

It is not necessary to notice other assignments.

For the error in excluding the testimony of the witness Maynard, the judgment below should be reversed.

REVERSED AND REMANDED.